# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# MONROE DIVISION

LOUISIANA CLEANING SYSTEMS ET AL.  CIVIL ACTION NO. 14-2853

VERSUS  JUDGE ROBERT G. JAMES

ANDY BROWN, INDIVIDUALLY  MAG JUDGE KAREN L. HAYES
AND AS SHERIFF OF JACKSON
PARISH, ET AL.

## RULING

This is a civil rights action brought pursuant to 42 U.S.C. § 1983 ("Section 1983") in which Plaintiffs Charles Nugent ("Nugent"), Louisiana Cleaning Systems, Inc. ("LCS"), Darisha Walker ("Walker"), Lashante Scott ("Scott"), Justin Freeman ("Freeman"), and Nicholas Jefferson ("Jefferson") (collectively "Plaintiffs") allege that Defendants Sheriff Andy Brown ("Sheriff Brown"), Deputy Gerald Palmer ("Deputy Palmer"), Deputy Michael Simonelli ("Deputy Simonelli"), and Deputy George Timothy Wyatt ("Deputy Wyatt") (collectively "Defendants") violated their First Amendment rights to free speech and Fourteenth Amendment rights to equal protection by prohibiting them from selling vacuum cleaners door to door.

Pending before the Court are Defendants' "Motion for Summary Judgment/Qualified Immunity" ("Motion for Summary Judgment") [Doc. No. 32] and "Plaintiff's Motion for Partial Summary Judgment on Defendant's Liability for Violation of 1ˢᵗ Amendment Rights and Violation of 42 U.S.C. § 1983 as Captured on Video." ("Motion for Partial Summary Judgment") [Doc. No. 34].

For the following reasons, Defendants' Motion for Summary Judgment is GRANTED IN

PART and DENIED IN PART, and Plaintiffs' Motion for Partial Summary Judgment is DENIED.

I.     FACTS AND PROCEDURAL HISTORY

This litigation stems from a series of incidents that took place in Jackson Parish in late 2013 involving LCS, a Louisiana-based business owned by Nugent that sells vacuum cleaners door to door in both rural and urban areas pursuant to government-issued permits. LCS and their salesmen's tactics generally include entering target locations in unmarked vans and sending individuals  door to door to sell the vacuum cleaners.

On October 4, 2013, Nugent and other LCS salespeople were conducting door-to-door sales in Jackson Parish. Multiple residents made complaints that the salespeople would not leave their homes. Deputy Palmer responded to a complaint made by homeowner Josh Smith ("Smith"). Deputy Palmer proceeded to Smith's house to investigate and, upon arriving, encountered Nugent. This incident was captured on Deputy Palmer's body camera. ("first incident").

In the first incident, Deputy Palmer explained to Nugent that he had received numerous complaints and recommended that Nugent and his employees find another parish in which  to solicit:

| Deputy Palmer: | Okay. Well, we've got several people calling us about y'all. We can't stop you from doing your job, but you need to–when people tell you no, you've got to go. Know what I mean? It's over with. |
| | ... |
| Deputy Palmer: | Well, she let you in, I understand that, but I'm just giving you some good advice that you'd be better off somewhere else. Cause if we keep getting complaints, we're gonna end up probably doing something about it. |
| | ... |
| Deputy Palmer: | We're not too keen on door-to-door salesman in this parish, so you probably gonna run into alot of problems. You're probably better off to go to another parish, according to my sheriff. |

2

Nugent:              Yeah?

Deputy Palmer:       But that's up to you.

[Doc. No. 34-14, Exh. P-8].

After the exchange, Deputies Simonelli and Wyatt arrived on the scene, but they had no interaction with Nugent or the LCS salespeople. Eventually, Nugent and the LCS salespeople left Smith's residence.

Later that evening, Deputy Palmer and two unidentified deputies responded to another complaint. In her declaration, Gayle Cavett ("Cavett"), a 72-year-old woman, alleges that an LCS salesman entered her home after she had shown interest in purchasing a vacuum cleaner. After she began to complete the paperwork, she decided she no longer wished to purchase the vacuum. [Doc. No. 32-4, Declaration of Gayle Cavett, Exh. B]. She maintains that the LCS salesman informed her that she had to complete the purchase because she had started the paperwork. Cavett says that she then asked the salesman to leave her home. The salesman refused to leave. While the LCS salesman was still in the Cavett's home, a neighbor, Vickey Telley ("Telley") knocked on the door. According to Telley's declaration, the salesman asked her to divulge her address. [Doc. No. 32-4, Declaration of Vickey Telley, Exh. C]. Telley became uncomfortable with the situation and left. She telephoned her friend, Gayle Hobson ("Hobson"), and the two decided to call the police.

Deputy Palmer and two unidentified deputies arrived shortly after Telley and Hobson made the call. According to Cavett, the salesperson was still in her residence at the time Deputy Palmer arrived. Cavett informed Deputy Palmer that she did not want the salesperson in her home and that she had previously asked him to leave.

Nugent and the LCS salespeople recorded the second incident ("second incident") ; however,

3

they did not begin filming until after Deputy Palmer had spoken to Cavett. Tensions mounted, and

Deputy Palmer confronted Nugent, at one point ordering that he and the LCS employees leave the

parish or face arrest:

| | |
|---|---|
| Deputy Palmer: | Step on round here. I'm gonna do some talkin', you gonna do some listening. I got a call from my house, ok. People calling me personally, ok. People calling the sheriff office, ok. This evolution is over, ok. Here's the deal, if you go back on anybody's property, every one of you's gonna be a minimum of a thousand dollars ($1,000) to get out of jail, ok. So it's up to you. |
| Deputy Palmer: | You got a permit, this is your way to make a living, you make the decision, but if you go on any property and we get another call tonight it's gonna be a minimum of a thousand ($1,000) to get out of jail, ok. So it's up to you. You got a permit, this is your way to make a living, you make the decision, but if you go on any property and we get another call tonight and we come across you, you going to jail. This is... |
| ... | |
| Unidentified Jackson Parish Deputy: | What he's telling you is, you better find the surroundings of Jackson Parish and leave it and go, and go to some other parish because we ain't gonna tolerate it here. |
| ... | |
| Unidentified Jackson Parish Deputy: | Are you familiar with the trespass laws? |
| Deputy Palmer: | We're at the point now we don't care. |
| Nugent: | I'm not trying to argue with you, I'm just... |
| Unidentified Jackson Parish Deputy: | I'm just trying to help you out tremendously. Are you familiar with the trespassing laws? According to the law you do not have to post your property... |

[Doc. No. 34, Exh. P-4].

Following this incident, Nugent and the LCS salespeople left Jackson Parish. About a month

later, another LCS salesperson, Jefferson, who was not present during the earlier incidents, alleges

he was threatened with arrest and mocked by unidentified Jackson Parish deputies after he attempted to make sales in the area. ("the third incident"). He further alleges that the Jackson Parish deputies forced him to round up his fellow salesmen who were in the process of conducting in-home demonstrations and leave the parish. No recording of this incident exists, and, in his later deposition testimony, Jefferson could not identify the Jackson Parish deputies who were allegedly involved. [Doc. No. 34-22, Deposition of Nicholas Jefferson, Exh. P-16].

On June 6, 2014, Plaintiffs' counsel sent a certified letter to Sheriff Brown. The letter accused the Jackson Parish deputies of harassment, retaliation in response to free speech in violation of the First Amendment, and discrimination in violation of the Fourteenth Amendment's Equal Protection Clause. The letter also stated:

> If we do not hear that the salesman [*sic*] can do business free of police harassment in Jackson Parish within seven days, suit will be filed in federal court for the violations under 42 U.S.C. § 1983  and 42 U.S.C. § 1988, and jury trial under 42 U.S.C. § 1983, the 1st Amendment and the 14th Amendment.

Four days later, Sheriff Brown responded to Plaintiffs' letter and assured them that they were welcome to do business in Jackson Parish without fear of police harassment.

Despite that correspondence, Plaintiffs filed the instant suit on October 2, 2014. [Doc. No. 1]. The original Complaint named Sheriff Brown in his official and individual capacities as a defendant; it also purported to bring suit against "Jackson Parish Deputies Officers ABC and Officer XYZ" in their official and individual capacities. *Id*. The Complaint asked for a declaratory judgment finding that Defendants' actions violated Plaintiffs' rights under the First and Fourteenth Amendment, compensatory damages, and a preliminary and permanent injunction to prevent Sheriff Brown and the Jackson Parish deputies from harassing Plaintiffs and prohibiting door-to-door sales.

On November 11, 2014, the parties agreed on a preliminary injunction that affirmed

Plaintiffs' rights to conduct door-to-door solicitations in Jackson Parish free from harassment. [Doc. No. 10].  Plaintiffs subsequently began selling vacuum cleaners door to door in Jackson Parish again.

In April of 2015,  Plaintiffs amended the original Complaint, substituting Deputies Wyatt and Simonelli for "Jackson Parish Deputies Officers ABC and Officer XYZ." [Doc. No. 18].

On September 25, 2015, Defendants filed a Motion for Summary Judgment. [Doc. No. 32]. Later that day, Plaintiffs filed their own Motion for Partial Summary Judgment. [Doc. No. 34]. Both parties then filed memoranda in opposition. [Doc. Nos. 38, 39].

## II.   LAW AND ANALYSIS

### A.    Summary Judgment Standard

Under Federal Rule of Civil Procedure 56, summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2). The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19

F.3d 1017, 1023 (5th Cir. 1994). In evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255. However, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. Thus, Summary Judgment is appropriate if a reasonable jury could not return a verdict for the nonmoving party." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248(1986)).

**B.      Transaction or Compromise**

Defendants first argue that Plaintiffs' June 6 letter was an offer to compromise this lawsuit which Defendants accepted by responding. Plaintiffs' letter stated: "If we do not hear that the salesman [*sic*] can do business free of police harassment in Jackson Parish within seven days, suit will be filed in federal court for the violations under 42 U.S.C. § 1983 and 42 U.S.C. § 1988, and jury trial under 42 U.S.C. § 1983, the 1st Amendment and the 14th Amendment violations." Defendants responded to the letter noting that Plaintiffs were free to do business in Jackson Parish without fear of harassment.

Summary judgment is inappropriate on this issue because it is unclear whether Plaintiffs intended to compromise their claims.

Louisiana Civil Code article 3071 defines a compromise as:

A contract whereby the parties, through mutual concessions made by one or more of them, settle a dispute or an uncertainty concerning an obligation or other legal relationship.

Louisiana jurisprudence has further explained that, in order for a valid compromise to exist, the parties must reach a meeting of the minds. *See Feingerts v. State Farm Mut. Auto. Ins. Co.*,

2012-1598, p. 11 (La. App. 4 Cir. 6/26/13), 117 So.3d 1294.  That is, both parties must intend to settle the dispute–one does not accidently terminate her right to judicial recourse:

> A compromise is valid if there is a meeting of the minds of the parties as to exactly what they intended when the compromise was reached. *Walk Haydel & Associates, Inc. v. Coastal Power Prod. Co.*, 98-0193, p. 3 (La. App. 4 Cir. 9/30/98), 720 So.2d 372, 373 (citing *Pat O'Brien's Bar, Inc. v. Franco's Cocktail Prods., Inc.*, 615 So.2d 429 (La. App. 4 Cir. 1993).

*Feingerts*, 117 So.3d at 11.

Here, Plaintiffs' June 6 letter does not contain the words transaction, compromise, or settlement; while those words are not necessary to effect a valid transaction, their absence could lead a reasonable fact finder to conclude that the June 6 letter was not an offer to compromise. It is also telling that Defendants did not mention this purported compromise until they filed the instant motion.

A genuine issue of material fact exists with respect to Plaintiffs' intention to settle this matter; therefore, Defendants' Motion for Summary Judgment is DENIED to the extent they seek a finding that the parties entered into a valid compromise under Louisiana law.

### C.    Sheriff Brown's Liability in his Individual and Official Capacities

Defendants next argue that Sheriff Brown is not liable in his individual or official capacity because he was not personally involved in any of the incidents, nor did the incidents occur pursuant to a custom or policy.  Plaintiffs counter that Sheriff Brown was personally involved or ratified the deputies' actions making him liable in both his individual and official capacities.

### 1.    *Sheriff Brown in his Official Capacity*

A suit against a government official in his official capacity is equivalent to a suit against the government entity of which he is an agent. *Burge v. Parish of St. Tammany*, 187 F.3d 452, 466 (5th

Cir. 1999). Thus, Plaintiffs' suit against Sheriff Brown in his official capacity is actually a suit against Jackson Parish. *Jacobs v. W. Feliciana Sheriff's Dep't*, 228 F.3d 388, 392 (5th Cir. 2000) ("suit against Sheriff Daniel in his official capacity is a suit against the Parish.")

"Municipal Liability under 42 U.S.C. § 1983 requires proof of the following three elements: 'a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom.'"[1] *Piotrowski v. City of Houston,* 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell v. Dep't. of Social Serv. of City of New York*, 436 U.S. 658, 694 (1978). Accordingly, Plaintiffs must first establish that Sheriff Brown is a policymaker.

Under Louisiana law, the sheriff is a final policymaker. *Craig v. St. Martin Parish Sheriff*, 861 F.Supp. 1290, 1300 (W.D. La. 1994) (citing LA. CONST. ART. 5 § 27 ("[The sheriff] shall be the chief law enforcement officer in the parish.")

Next, Plaintiffs must establish that an official policy or custom was the moving force behind their alleged deprivation of constitutional rights. "Municipal liability for section 1983 violations results if a deprivation of constitutional rights was inflicted pursuant to official custom or policy." *Piotrowski*, 237 F.3d at 579. Ordinarily official policy is evidenced through duly promulgated policy statements, ordinances or regulations. A policy may also be evidenced by custom, that is:

> ...a persistent, widespread practice of City officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy...Actions of officials or employees of a municipality do not render the municipality liable under Section 1983 unless they execute official policy as above defined.

*Webster v. City of Houston*, 735 F.2d 838, 841 (5th Circ. 1984).

---

[1]Caselaw uses the term "municipal liability" to describe actions against parishes or counties, as well as cities. *See Norton v. Livingston Parish Detention Center*, 13-437, 2013 WL 5519400, at*4 (M.D. La. Oct. 2, 2013).

9

Finally, "municipalities may be liable, in certain situations, for single episodes of conduct." *Milam v. City of San Antonio*, 113 Fed. App'x. 622 p. 626 (5th Cir. 2004).   "For instance, a decision to adopt a particular course of conduct represents official policy even if it is not intended to govern future conduct so long as the decision was made by a final policymaker." *Hobart v. City of Stafford*, 916 F.Supp.2d 783, 792 (S.D. Tex. 2013) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986)).

Defendants argue that Plaintiffs fail to allege the existence of a policy or custom and that certain isolated incidents of misconduct will not trigger municipal liability because such incidents are, by their nature, not the persistent, widespread violations that constitute policy or custom. Plaintiffs respond that Sheriff Brown was personally involved or, in the alternative, ratified the deputies' conduct after the fact.

Plaintiffs can overcome summary judgment on this issue. Although not cited by Plaintiffs, the video of the second incident raises a genuine issue of material fact as to Sheriff Brown's personal involvement. During that incident, after stating that Nugent and the LCS salespeople would go to jail if they did not leave the parish, Deputy Palmer made the following remark:

> Let me see that phone real quick. [tap, tap, tap] Understand what I'm telling you? Come on. This comes from the big boss. He runs the parish.

Although Deputy Palmer does not explicitly reference an order from Sheriff Brown, this statement, making reasonable inferences in favor of Plaintiffs, establishes a genuine issue of material fact as to whether Sheriff Brown instructed the deputies to banish Nugent and the LCS salespeople from the parish. Such an instruction would be an isolated decision by a final decision maker. It would also be the moving force behind Plaintiffs' alleged constitutional injuries.  At the least, it

10

precludes summary judgment on Defendants' claim that Plaintiffs have failed to point to any custom or policy which was the moving force behind their alleged injuries resulting from the first and second incident. Therefore, to they extent they seek a finding that Sheriff Brown is not liable in his official capacity because of a lack of involvement, Defendants' Motion for Summary Judgment is DENIED.

### 2.    *Sheriff Brown in his Individual Capacity*

Defendants also contend that Sheriff Brown's lack of personal involvement in the incidents absolves him from any liability in his individual capacity. In support of this argument, Defendants point to Nugent's, Freeman's, Walker's, Scott's, and Jefferson's deposition testimony; each Plaintiff admits to never meeting Sheriff Brown. Plaintiffs again counter that Sheriff Brown "set this whole thing in motion" and ratified the deputies' conduct. [Doc. No. 39, p. 12].

A valid individual capacity claim requires a Section 1983 plaintiff to "establish that the defendant was either personally involved in a constitutional deprivation or that his wrongful actions were causally connected to the constitutional deprivation." *James v. Texas Collin Cty.*, 535 F.3d 365, 373 (5th Cir. 2008). Indeed, an officer must, in some way, personally deprive a Section 1983 plaintiff of his federal rights in order to incur liability in his individual capacity; respondeat superior liability is repugnant to the plain language of the statute.

Again, when viewed in a light most favorable to Plaintiffs–the nonmoving party on this issue–a genuine issue of material fact exists: whether Sheriff Brown ordered Nugent and the LCS salespeople's expulsion from the parish. Although Deputy Palmer does not explicitly mention Sheriff Brown during the second incident, a reasonable fact finder could infer that the "big boss" and Sheriff Brown are one and the same. Thus, Defendants' Motion for Summary Judgment on this

issue is DENIED to the extent they seek dismissal of Plaintiffs' claims against Sheriff Brown in his individual capacity based on lack of personal involvement.

### D. Prescription

Defendants maintain that even if Plaintiffs have a cause of action against Sheriff Brown in his individual or official capacity, the claims against Deputies Wyatt, Simonelli, and Palmer have prescribed because Plaintiffs added them to their Amended Complaint after the statute of limitations had run. Plaintiffs disagree; they argue that, under Louisiana law, suit against one joint tortfeasor serves to interrupt suit as to other joint tortfeasors. Thus, the timely suit against Sheriff Brown interrupted the prescriptive period as to the other deputies.

"Because there is no federal statute of limitations for actions brought pursuant to § 1983, federal courts borrow the forum state's general personal injury limitations period." *Wallace v. Kato*, 549 U.S. 384, 387 (2007). Federal courts also look to state law for tolling provisions. *Burge v. St. Tammany*, 996 F.2d 786, 788 (5th Cir. 1993). Accordingly, Louisiana Civil Code article 3492's one-year prescriptive period applies to Plaintiffs' Section 1983 claim. However, Louisiana law also provides that the interruption of prescription against one joint tortfeasor is effective against all joint tortfeasors.

Here, Plaintiffs originally filed suit on November 2, 2014, against Sheriff Brown in his official and individual capacities and "Jackson Parish Deputies Officers ABC, and Officer XYZ." Then, on April 28, 2015, after the one-year prescriptive period had passed, Plaintiffs amended their Complaint, adding Deputies Palmer, Wyatt, and Simonelli in their official and individual capacities.

Citing *Jacobson v. Osborne,* 133 F.3d 315 (5th Cir. 1998), Defendants argue that the claims against Deputies Palmer, Wyatt, and Simonelli must be dismissed as untimely. Defendants are

correct that  Plaintiffs cannot take of advantage of Federal Rule of Civil Procedure 15(c)'s relation back doctrine; that doctrine does not allow an amendment to relate back when the failure to name a party is due to ignorance of a party's identity as opposed to a mere mistake of name. *See Jacobson*, 133 F.3d at 320.

However, there is no need for Plaintiffs to invoke the relation back doctrine if Sheriff Brown and Deputies Palmer, Wyatt, and Simonelli are joint tortfeasors. *See Pastor v. Foti*, No. 00-2213 2002 WL 550983 (E.D. La. Apr. 11, 2002). *Pastor's* facts are similar to the case at hand. A plaintiff filed a complaint naming a parish sheriff and an unknown deputy referred to as "John Doe." *Id.* The complaint alleged that the deputy committed a battery on the defendant and that the sheriff was jointly liable because he failed to adequately train the deputy. *Id.* After the prescriptive period had run, the plaintiff discovered the deputy's name and attempted to amend his complaint. *Id.* The defendant argued that the amendment was futile because relation back was inappropriate under the circumstances. *Id.* The court disagreed, noting that the sheriff and deputy were joint tortfeasors. *Id.* at *2. Thus, suit against the sheriff interrupted prescription as to the deputy.

The next logical question in the case at hand, then, is whether Sheriff Brown and the later-named deputies are joint tortfeasors, or if there is at least a genuine issue of material fact with respect to that issue. Under Louisiana law, [a] joint tortfeasor is one whose conduct (whether intentional or negligent) combines with the conduct of another so as to cause injury to a third party." *Greer v. Johnson*, 37,655, p.5 (La. App. 2 Cir. 9/24/03); 855 So.2d 898, 901.

In this case, there is a genuine dispute of material fact as to whether Sheriff Brown gave the command to expel Plaintiffs from the parish, and, therefore, a genuine dispute of material fact as to whether Sheriff Brown and the other Defendants are joint tortfeasors. To the extent it hinges on a

theory of prescription, Defendants' Motion for Summary Judgment is DENIED.

### E.      Plaintiff Jefferson and the Third Incident

Though not plead by Defendants, the Court intends to issue a *sua sponte* GRANT of summary judgment against Plaintiff Jefferson because it appears his only involvement in this case stems from the third incident. Plaintiffs produce no evidence showing that incident was caused by any Jackson Parish policy, custom, or single action by a final policy maker. Thus, Sheriff Brown can shoulder no blame for this incident in his official capacity. Nor can any of the named Defendants be held responsible in their individual capacities as there is  no evidence that Sheriff Brown, Deputy Palmer, Deputy Wyatt, or Deputy Simonelli were present during the third incident or had any knowledge of it.

"[I]t is well settled that a district court may grant summary judgment *sua sponte,* 'so long as the losing party has ten days notice to come forward with all of its evidence' in opposition to summary judgment." *Love v. National Medical Enterprises*, 230 F.3d 765, 770-71 (5th Cir. 2000) (quoting *Washington v. Resolution Trust Corp.*, 68 F.3d 935, 939 (5th Cir. 1995). Plaintiffs shall have ten days to come forward with evidence in opposition to a *sua sponte* grant of summary judgment dismissing Jefferson's claims from this case because there is no evidence that the third incident took place pursuant to a Jackson Parish policy, custom, or final decision by a policymaker, or that any of the named defendants were present during the third incident or had knowledge of it.

### F.      Deputies Wyatt and Simonelli

Defendants next argue that Plaintiffs' claims against Deputies Wyatt and Simonelli must be dismissed because they did not personally cause Plaintiffs' alleged injuries.

The Court will dismiss the claims against Deputies Wyatt and Simonelli in their official capacities because official capacity suits are only appropriate when brought against policymakers. *See Elphage v. Gautreaux*, 969 F.Supp.2d 493, 512 (M.D. La. 2013) ("The claims against Deputy O'Connor in his official capacity must fail because he is not a policymaker for East Baton Rouge Parish."). *See also*, *Club Retro, L.L.C. v. Hilton*,  07-0193, 2008 WL 1901723, at *7 (W.D. La. Apr. 8, 2008) ("Since deputy sheriffs are not policymakers for the Rapides Parish Sheriff and Rapides Parish Law Enforcement District, the claims against Deputies Slocum, Doyle, LaCourt and Rauls in their official capacities should be dismissed.").

The claims against Deputies Wyatt and Simomelli in their individual capacities are dismissed as well.  There is no evidence that either deputy was present during the second incident. As for the first incident, the video shows a lack of interaction between Nugent and Deputies Wyatt and Simonelli–neither deputy so much as spoke to Nugent.

As previously discussed, an official does not subject himself to liability in his individual capacity absent some wrongdoing that causes the constitutional injury. Therefore, Defendants' Motion for Summary Judgment is GRANTED to the extent they ask the Court to dismiss Plaintiffs' claims against Deputies Wyatt and Simonelli.

### G.      Qualified Immunity

The parties have filed cross motions for summary judgment on the qualified immunity issue. Plaintiffs contend that Defendants are not entitled to qualified immunity as a matter of law. Defendants claim that they are entitled to qualified immunity as a matter of law.[2]

---

[2]At this point in the analysis, the only remaining defendants are Sheriff Brown in his individual and official capacity and Deputy Palmer in his individual capacity. Qualified immunity cannot shield Sheriff Brown from an official capacity claim.

In many respects, qualified immunity can be seen as a compromise between two competing, yet equally important American endeavors: the unfettered exercise of constitutional liberties and the vigorous pursuit of law and order. The doctrine recognizes the importance of constitutional liberties, while also giving law enforcement personnel a fair amount of discretion to handle difficult and dangerous circumstances. Therefore, "government officials performing discretionary functions generally are shielded from liability for civil damage insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

The Supreme Court has since clarified the "clearly established" prong of the inquiry by tying it to the reasonableness of the official's conduct under the circumstances. To be "clearly established" for purposes of qualified immunity, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Accordingly, after *Anderson*, when assessing whether the right at issue was clearly established at the time the defendant acted, the Court must ask whether the official's conduct was objectively reasonable.

The "clearly established" standard does not mean that qualified immunity shields an official's actions unless "the very action in question has previously been held unlawful." *Id.* It does not mean, for example, that previous courts must have decided cases with "materially similar facts" in order for a plaintiff to overcome the qualified immunity defense. *See Hope v. Pelzer*, 536 U.S. 730, 739 (2002).

On the other hand, "an official does not lose qualified immunity merely because a certain

16

right is clearly established in the abstract. It is clearly established that the government may not deny

due process or inflict cruel and unusual punishment, for example, but those abstract rules give

officials little practical guidance as to the legality of particular conduct. Qualified immunity should

not be denied unless the law is clear in the more particularized sense that reasonable officials 'should

be on notice that their conduct is unlawful.'" *Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004)

(quoting *Saucier v. Katz*, 533 U.S. 194, 206 (2001)). Thus, when determining whether an official's

conduct violated a "clearly established" right, the Court should ask whether the official had fair

notice that his conduct was illegal in more than an abstract sense.

"A necessary concomitant to the determination of whether the constitutional right asserted

by a plaintiff is 'clearly established' at the time the defendant acted is the determination of whether

the plaintiff has asserted the violation of a constitutional right at all." *Siegert v. Gilley*, 500 U.S. 226,

232 (1991). The Court must first consider whether the challenged conduct, viewed in the light most

favorable to Plaintiffs, amounts to a violation of constitutional law in the first place.

### 1. *First Amendment Violations*

In addition to seeking summary judgment on the qualified immunity issue, Plaintiffs also

seek summary judgment that Defendants' actions amount to a constitutional violation as a matter

of law. For convenience, and because the analysis does not differ from the first prong of the

qualified immunity analysis, the Court analyzes Plaintiffs' claim that Defendants' actions amount

to a First Amendment violation as a matter of law in this section of the qualified immunity analysis.

Plaintiffs' allegations stem, primarily, from two incidents. First, on October 4, 2013, Jackson

Parish deputies responded to a residential complaint that an LCS salesman would not leave a

potential customer's home after being asked to do so, and the deputies recommended that Nugent

and the LCS salespeople take their business to another parish. The second incident also occurred on

October 4, 2013. Jackson Parish deputies were again contacted by residents complaining that LCS

salespeople would not leave their homes after being asked to do so. After arriving on the scene,

Deputy Palmer and another unidentified deputy ordered Nugent and the LCS salespeople to leave

the parish or face arrest. The video transcript of this encounter, in pertinent part, reads as follows:

| | |
|---|---|
| Deputy Palmer: | You got a permit, this is your way of making a living, you make the decision, but if you go on any property and we get another call tonight it's gonna be a minimum of a thousand (1,000) dollars to get out of jail, ok. So it's up to you. You got a permit, this is your way to make a living, you make the decision, but if you go on any property and we get another call tonight and we come across you, you going to jail. This is... |
| Nugent: | What, what was the call? Just that we're working? You see our permit, right? |
| Unidentified Jackson Parish Deputy: | That you're out here harassing people. |
| Deputy Palmer: | But if we come back out tonight or tomorrow, or any day you gonna go to jail. |
| Nugent: | Just for a call that we're knocking on doors? |
| Deputy Palmer: | It don't make me no difference. |
| Unidentified Jackson Parish Deputy: | What he's telling you is, you better find the surroundings of Jackson Parish and leave it and go to, and go to some other parish because we ain't gonna tolerate it here. |
| Nugent: | Even though I have a permit to work and I have paid? |
| Deputy Palmer: | Yes, that's exactly right. |
| | ... |
| Unidentified Jackson Parish Deputy: | Are you familiar with the trespassing laws? |

18

| | |
|---|---|
| Deputy Palmer: | We're at the point now we don't care. |
| Nugent: | I'm not going to argue with you, I'm just... |
| Unidentified Jackson Parish Deputy: | I'm just trying to help you out, tremendously. Are you familiar with the trespassing laws? According to the law you don't have to post your property...You do not have to post your property. If you come on someone's land without their permission, you're in violation of trespassing. Familiarize yourself with the criminal law. |
| Deputy Palmer: | Just go home. Get out of Jackson Parish. |

[Doc. No. 35, Exh. P-4].

Plaintiffs' allegations amount to a claim that Defendants retaliated against them for exercising their First Amendment right to commercial speech.

The First Amendment not only prohibits direct limitations on speech, it also prohibits adverse government action against an individual because of her exercise of First Amendment freedoms. *See Colson v. Grohman*, 174 F.3d 498, 508 (5th Cir. 1999).

In order to establish a First Amendment retaliation claim, a plaintiff must demonstrate that:

(1)    She was engaged in a constitutionally protected activity;

(2)    The defendant's conduct caused her to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity;

(3)    That the defendant's adverse actions were substantially motivated by her constitutionally protected activities.

*Keenan v. Tejada*, 290 F.3d 252, 257 (5th Cir. 2002).

Case law also establishes that "some retaliatory actions-even if they actually have the effect of chilling the plaintiff's speech-are too trivial or minor to be actionable as a violation of the First Amendment." *Id.* at 258.

19

Here, the alleged retaliatory action from the first incident was Deputy Palmer's recommendation that Nugent and the LCS salespeople take their business to another parish where it might be better received. Even when viewed in a light most favorable to Plaintiffs, this is not a retaliatory action that would "chill a person of ordinary firmness from engaging in the activity." *Id.* at 257.

There is a genuine issue of material fact, however, as to whether Deputy Palmer's command to leave the Parish during the second incident violates the First Amendment under the three-part *Keenan* test. First, Defendants do not question that Plaintiffs were involved in a constitutionally protected activity–commercial solicitation. Nor do Defendants seriously contend that Deputy Palmer's order to leave the parish would not "chill a person of ordinary firmness from continuing to engage in the activity." Defendants do argue  that Plaintiffs have produced no evidence showing the adverse action was substantially motivated by hostility to commercial speech. As Defendants see it, all the evidence shows that Deputy Palmer's actions were motivated by a desire to stop complaints–not vacuum cleaner sales.

This argument frames the protected activity too narrowly. The issue is whether the order to leave the Parish was substantially motivated by an aversion to door-to-door solicitation. Issues of motivation are usually inappropriate for resolution by summary judgment. This is especially true in the instant case, where Deputy Palmer made the following remark: "We're not too keen on door-to-door salesmen in this parish, so you probably gonna run into a lot of problems. You're probably better off to go to another parish, according to my sheriff."

A genuine issue of material fact exists as to whether Deputy Palmer and Sheriff Brown were substantially motivated by an aversion to door-to-door solicitation.

Therefore, Plaintiffs' Motion for Summary Judgement that Defendants violated their First Amendment rights is DENIED.

### 2. The "Clearly Established Prong"

The impropriety of summary judgment with respect to the constitutional violation does not end the qualified immunity analysis. The Court must determine whether Defendants violated a clearly established constitutional right of which a reasonable officer would have been aware.

The question is not, as Plaintiffs contend, whether Defendants knew about Plaintiffs' First Amendment right to commercial speech in the abstract. Rather, we must ask whether Defendants had fair notice that their conduct under these specific circumstances deprived Plaintiffs of their constitutionally protected right to free speech, keeping in mind that the qualified immunity defense provides "ample protection for all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

It is well established that courts should grant officials qualified immunity from free speech retaliation claims when the officials have probable cause to arrest the plaintiff and actually make that arrest. *See, e.g. Mesa v. Prejean*, 543 F.3d 264, 273 (5th Cir. 2008) ("Probable cause is an objective standard. If it exists, any argument that the arrestee's speech as opposed to her criminal conduct was the motivation for her arrest must fail, no matter how clearly that speech may be protected by the First Amendment."); *Hartman v. Moore*, 547 U.S. 250, 252 (2006) (holding that want of probable cause to support the underlying criminal charge must be alleged and proven for a First Amendment retaliation claim to be viable.); *Keenan*, 290 F.3d at 261-62 ("This court has stated that government retaliation against a private citizen for exercise of First Amendment rights cannot be objectively reasonable. *Rolf*, 77 F.3d at 828. The *Rolf* case did not, however, consider a situation in which law

enforcement officers might have a motive to retaliate but there was also a ground to charge criminal conduct against the citizen they disliked. In that situation, the objectives of law enforcement take primacy over the citizen's right to avoid retaliation.").

Defendants argue that Deputy Palmer had probable cause to arrest Plaintiffs for criminal trespass, and, had they done so, Defendants would undoubtedly be entitled to qualified immunity. Their brief ably makes the following argument: "It is an odd notion, then, that by electing not to arrest when probable cause existed, that the defendants should somehow be subject to an alleged constitutional violation for which they would not be entitled to qualified immunity." [Doc. No. 32-2, p. 23].

The Court agrees. Fifth Circuit and Supreme Court precedent firmly holds that First Amendment retaliatory actions fail as a matter of law when the official has probable cause to arrest and does arrest. Indeed, in this case, had Defendants arrested Plaintiffs for criminal trespass, qualified immunity would undoubtedly be appropriate.

An officer might reasonably interpret the current caselaw to stand for the proposition that, upon acquiring probable cause, she may give the plaintiff an opportunity to leave the jurisdiction before arresting him without subjecting herself to a First Amendment retaliation claim. Accordingly, the remaining Defendants' conduct, under these facts, was not objectively unreasonable, nor did it violate clearly established federal law.[3] Thus, the remaining Defendants–Deputy Palmer and Sheriff

---

[3]LA. REV. STAT. 14:63.3 provides that: "No person shall without authority go into or upon or remain in or upon or attempt to go into or upon or remain in or upon any structure, watercraft, or any other movable, or immovable property, which belongs to another, including public buildings and structures, ferries, and bridges, or any part, portion or area thereof, after having been forbidden to do so, either orally or in writing..."

In this case, the evidence shows that Cavett informed Deputy Palmer that an LCS salesperson remained in her home after being asked to leave, giving him probable cause to arrest

Brown–are entitled to qualified immunity from Plaintiffs' claims against them in their individual capacities. To the extent they seek a finding that the are entitled to qualified immunity from monetary damages in their individual capacities, Defendants' Motion for Summary Judgment is GRANTED. To the extent they seek a finding that Defendants are not entitled to qualified immunity from monetary damages in their individual capacities, Plaintiffs' Motion for Partial Summary Judgment is DENIED.

### 3. Equal Protection Claim

Plaintiffs also allege that Defendants' actions violated their right to equal protection under the Fourteenth Amendment. More specifically, though it is not entirely clear, it seems that Plaintiffs believe they were discriminated against because of their race. However, Plaintiffs introduce absolutely no evidence in support of that claim. Therefore, Defendants' Motion for Summary Judgment is GRANTED to the extent they seek a finding that they did not violate Plaintiffs' right to equal protection. Consequently, Plaintiffs' Motion for Partial Summary Judgment on the equal protection issue is DENIED.

### G. Damages

Defendants next contend that Plaintiffs have suffered no damages as a result of the allegedly unconstitutional actions at issue in this case. Specifically, Defendants argue that Plaintiffs have failed to adduce any proof of their losses that resulted from temporarily leaving Jackson Parish. On the other hand, Plaintiffs contend that two people quit as a result of Defendants' actions. Plaintiffs

---

for criminal trespass. *See Vincent v. City of Sulphur*, 28 F.Supp. 3d 626, 636 (W.D. La. 2014) ("[LA. REV.STAT. 14:63.3] is typically used to evict disruptive persons from private property–or, occasionally, government buildings–after such persons have been given a reasonable contemporaneous warning and thereafter refused to comply.")

also point out that they returned to Jackson Parish after this Court issued a preliminary injunction that prevented Defendants from thwarting their door-to-door solicitation without cause; upon returning, they claim to have made roughly $45,008 in gross sales.

When viewed in the light most favorable to Plaintiffs, the non-moving party on this issue, this evidence is sufficient to raise a genuine issue of material fact with respect to damages. A reasonable fact finder, with knowledge of Plaintiffs' earnings after returning to Jackson Parish since this Court's preliminary injunction, could find that Defendants' actions caused Plaintiffs to lose business in the interim period. Defendants' Motion for Summary Judgment is DENIED to the extent they seek a finding that Plaintiffs suffered no damages as a result of being ordered to leave the Parish.

### H.    Plaintiffs' Other Claims

In their Motion for Partial Summary Judgment, Plaintiffs ask the Court for summary judgment on two additional issues.

Plaintiffs ask this Court for summary judgment that "Defendants' Claims that LCS's Employees were Independent Contractors and more [sic] Permits for each Salesmen was required is Without Merit."

In their response, Defendants, despite questioning the relevance of the issue, point to Nugent's deposition testimony in which he admits that the salespeople in this case were independent contractors, not employees of LCS:

> Q.    Now, I understand from the last deposition, I am not going to go through it all again, but general context, you have salespersons, 1099 people in the van and there is door-to-door type sales?
>
> A.    Uh-huh.

Q.  When a permit is applied for, okay, you go into these parishes and make the applications, you do it under Louisiana Cleaning Systems.

A.  Yes.

Q.  But every person that's working with you are independent contractors, right?

A.  Yep.

[Doc. No. 38-2, Deposition of Charles Nugent, Exh. A].

However, this Court's November 14, 2014 preliminary injunction ordered that LCS and its salesmen would have the right to conduct door-to-door solicitations; it did not discuss the employee/independent contractor distinction.  Moreover, Plaintiffs maintain that no one told them multiple permits were needed to sell their vacuum cleaners door to door. In both encounters with the LCS salesmen, Deputy Palmer failed to mention anything about the issue. Therefore, there is a genuine issue of material fact as to whether the subject Plaintiffs were LCS employees or independent contractors who each needed a permit to conduct door-to-door sales. Plaintiffs' Motion for Partial Summary Judgment on this issue is DENIED.

Plaintiffs' next argument is entitled "The Sheriff's Claim he could tell LCS employees to leave the Parish and follow/harass them due to their criminal history is not valid." Plaintiffs argue that their criminal history or lack thereof is irrelevant for trial purposes under the Federal Rules of Evidence. The Court will not address this issue in the summary judgment context, but as an evidentiary matter. Therefore, Plaintiffs' Motion for Partial Summary Judgment on the relevance of their criminal history is DENIED.

## III.   CONCLUSION

For these reasons, Defendants' Motion for Summary Judgment [Doc. No. 32] is GRANTED IN PART and DENIED IN PART. Defendants' Motion is GRANTED to the extent they seek a

25

finding that all claims against Deputies Wyatt and Simonelli should be dismissed, that Plaintiffs'

equal protection claim should be dismissed, and that Defendants are entitled to qualified immunity

from Plaintiffs' claims against them in their individual capacities, and these claims will be

DISMISSED WITH PREJUDICE.  The Motion is DENIED to the extent Defendants seek a finding

that Plaintiffs have compromised their claims, that Sheriff Brown has no liability in his individual

or official capacity based on a lack of involvement, or that Plaintiffs' claims have prescribed.

Therefore, the only claim that remains at this stage in the proceedings is a claim against Sheriff

Brown in his official capacity for an alleged First Amendment violation.

 Plaintiffs' Motion for Partial Summary Judgment [Doc. No. 34] is DENIED in its entirety.

 Finally, the Court gives Plaintiffs ten days to come forward with evidence in opposition to

a *sua sponte* GRANT of summary judgment dismissing Plaintiff Jefferson's claims from the case.

 MONROE, LOUISIANA, this 9th day of November, 2015.


ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE