UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **LOUISIANA CLEANING SYSTEMS, ET AL.** | **CIVIL ACTION NO. 14-2853** |
| **VERSUS** | **JUDGE ROBERT G. JAMES** |
| **ANDY BROWN, INDIVIDUALLY AND AS SHERIFF OF JACKSON PARISH, ET AL.** | **MAG. JUDGE KAREN L. HAYES** |

<u>**RULING**</u>

This is a civil rights suit involving alleged First Amendment violations. Plaintiffs Louisiana Cleaning Systems ("LCS"), Charles Nugent, ("Nugent"), Darrisha Walker ("Walker"), Lashante Scott ("Scott"), Justin Freeman ("Freeman"), Tyris Dauphine ("Dauphine"), and Nicolas Jefferson ("Jefferson") (collectively "Plaintiffs") originally brought this action against Defendants Sheriff Andy Brown ("Sheriff Brown"), Deputy Gerald Palmer ("Deputy Palmer"), Deputy Michael Simonelli ("Deputy Simonelli"), and Deputy Timothy Wyatt ("Deputy Wyatt") (collectively "Defendants") under 42 U.S.C. § 1983; at this point in the litigation, however, only Sheriff Brown remains as a Defendant.

Pending before the Court is its own *sua sponte* notice of intent to dismiss Plaintiff Jefferson's claims. For the following reasons, the Court declines to dismiss Jefferson's claims and allows him to proceed to trial.

**I. BACKGROUND**

The underlying facts can be briefly summarized for purposes of this *sua sponte* notice of intent to dismiss analysis. LCS is a Louisiana business that sells vacuum cleaners door to door in both rural and urban areas. LCS' sales tactics consist of entering target locations in unmarked vans and

sending individuals door to door to sell vacuum cleaners. Nugent owns the business.

There are multiple incidents upon which this lawsuit is based. For purposes of this motion, however, the relevant incident ("third incident") occurred in November 2013. At that time, Jefferson, an LCS salesperson who was not present during earlier incidents, alleges he was threatened with arrest and mocked by unidentified Jackson Parish deputies. He further claims that the Jackson Parish deputies forced him to round up his fellow salespeople who were in the process of conducting in-home demonstrations. The unidentified deputies then escorted Jefferson and other LCS salespeople to the parish line. No recording of the third incident exists. In fact, the only evidence that it ever occurred comes from Jefferson's deposition testimony.

The parties previously filed cross motions for summary judgement. [Doc. Nos. 32, 34]. In its Ruling on those motions [Doc. No. 54], the Court notified the parties that it intended to *sua sponte* dismiss Jefferson's claims because Plaintiffs made no attempt, either through argument or evidence, to tie the actions from the third incident to any of the named Defendants. In accordance with federal procedure, the Court allowed Plaintiffs ten days to respond. Plaintiffs responded within the allotted time period. [Doc. No. 58]. They now argue that Sheriff Brown was either personally involved in the third incident or that the incident occurred pursuant to a custom that Sheriff Brown knew of and failed to correct. In support of these contentions, they direct the Court to a portion of Jefferson's deposition testimony in which he testified that the unidentified Jackson Parish deputy that allegedly pulled him over stated "I need to call my boss for this one." [Doc. No. 39-22, Deposition of Nicholas Jefferson, p. 4]. After that call, other unidentified deputies supposedly arrived and forced Jefferson to round up the other LCS salespeople from the homes of potential customers. Then, according to Jefferson, the unidentified deputies escorted Jefferson and other LCS salespeople to the parish line.

## II. LAW AND ANALYSIS

### A. Deputies Palmer, Wyatt, and Simonelli

Plaintiffs have failed to produce evidence that would alter the status of Deputies Palmer, Wyatt, or Simonelli. Plaintiffs' claims against them have been dismissed with prejudice, and no reconsideration is warranted.

### B. Sheriff Brown in his Official Capacity.

Plaintiffs attempt to hold Sheriff Brown liable in his official capacity for the alleged actions unidentified Jackson Parish deputies took against Jefferson including forcing him to round up other LCS salespeople from the homes of potential customers and escorting them to the parish line. A suit against a government official in his official capacity is equivalent to a suit against the government entity of which he is an agent. *Burge v. Parish of St. Tammany*, 187 F.3d 452, 466 (5th Cir. 1999). Thus, Plaintiffs' suit against Sheriff Brown in his official capacity is actually a suit against Jackson Parish. *Jacobs v. W. Feliciana Sheriff's Dep't*, 228 F.3d 388, 392 (5th Cir. 2000) ("suit against Sheriff Daniel in his official capacity is a suit against the Parish.")

"Municipal Liability under 42 U.S.C. § 1983 requires proof of the following three elements: 'a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom.'"[1] *Piotrowski v. City of Houston,* 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell v. Dep't. of Social Serv. of N.Y.C.*, 436 U.S. 658, 694 (1978).

Plaintiffs can readily satisfy the first of those three elements. Under Louisiana law, the sheriff is a final policymaker. *Craig v. St. Martin Parish Sheriff*, 861 F.Supp. 1290, 1300 (W.D. La. 1994)

---

[1] Caselaw uses the term "municipal liability" to describe actions against parishes or counties, as well as cities. *See Norton v. Livingston Parish Det. Ctr.*, 13-437, 2013 WL 5519400, at *4 (M.D. La. Oct. 2, 2013).

(citing LA. CONST. ART. 5 § 27 ("[The sheriff] shall be the chief law enforcement officer in the parish.")).

Next, Plaintiffs must establish that an official policy or custom was the moving force behind their alleged deprivation of constitutional rights. "Municipal liability for section 1983 violations results if a deprivation of constitutional rights was inflicted pursuant to official custom or policy." *Piotrowski*, 237 F.3d at 579. Ordinarily, official policy is evidenced through duly promulgated policy statements, ordinances or regulations. A policy may also be evidenced by custom, that is:

> ...a persistent, widespread practice of City officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy...Actions of officials or employees of a municipality do not render the municipality liable under Section 1983 unless they execute official policy as above defined.

*Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984).

Finally, "municipalities may be liable, in certain situations, for single episodes of conduct." *Milam v. City of San Antonio*, 113 Fed. App'x. 622, 626 (5th Cir. 2004). "For instance, a decision to adopt a particular course of conduct represents official policy even if it is not intended to govern future conduct so long as the decision was made by a final policymaker." *Hobart v. City of Stafford*, 916 F.Supp.2d 783, 792 (S.D. Tex. 2013) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986)).

In this case, there are genuine issues of material fact as to Sheriff Brown's personal involvement in the third incident.[2] Specifically, in his deposition, Jefferson testified that a Jackson Parish deputy pulled him over. After pulling Jefferson over, the deputy remarked "I need to call my

---

[2]Finding a genuine issue of material fact as to Sheriff Brown's personal involvement in the third incident, the Court expresses no opinion as to whether the incidents in this suit establish a custom for purposes of municipal liability.

boss for this one." [Doc. No. 39-22, Deposition of Nicholas Jefferson, p. 4]. Although Jefferson was not sure whether the deputy was referring to Sheriff Brown, a reasonable finder of fact could conclude that he was. In a sheriff's department as small as that of Jackson Parish, it is unlikely that the chain of command was extensive. There are only so many "boss[es]" the deputy could have spoken with. Because Sheriff Brown is a final policymaker, his personal involvement in the allegedly unconstitutional action would result in liability for the parish if a fact finder determined that the involvement was the moving force behind the alleged constitutional tort. The Court declines to dismiss Plaintiff Jefferson's official capacity claim against Sheriff Brown based on the third incident.

### C. Sheriff Brown in his Individual Capacity

Plaintiffs also sue Sheriff Brown in his individual capacity for his alleged involvement in the third incident. Sheriff Brown cannot be held liable for his subordinate's actions unless: (1) he was personally involved in the Constitutional deprivation, or (2) a sufficient causal connection exists between the supervisor's wrongful conduct and the constitutional violation. *Craig*, 861 F.Supp. at 1299. "Under the second prong, 'supervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is repudiation of Constitutional rights and is the moving force of the Constitutional violation.'" *Id.* (quoting *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987)).

In this case, its unclear from the record whether Sheriff Brown was personally involved in the third incident. Jefferson's deposition testimony indicates that he might have been, and at this stage in the litigation, the Court makes all reasonable inferences in Plaintiffs' favor. Thus, there is sufficient evidence, if believed, to hold Sheriff Brown liable for any constitutional torts his subordinates may have committed during the third incident. The Court declines to dismiss Plaintiff

Jefferson's individual capacity claim against Sheriff Brown based on the third incident.

### D. Qualified Immunity

Although the Court previously found that Sheriff Brown is entitled to qualified immunity for the second incident, the Court's findings in this Ruling now require review of Sheriff Brown's alleged actions with regard to the third incident.

"Qualified immunity serves to ensure government employees are not impeded from their public work to defend frivolous actions." *Porter v. Valdez*, 424 Fed. App'x 382, 386 (5th Cir. 2011). The traditional qualified immunity analysis consists of two prongs: (1) whether plaintiffs show violation of a clearly-established statutory or constitutional right; and, if so, (2) whether they show defendants' actions were "objectively unreasonable" in light of clearly established law. *See Nunez v. Simms*, 341 F.3d 385, 387 (5th Cir. 2003).

#### 1. *Constitutional Violation*

Plaintiffs claim that Sheriff Brown retaliated against them because of their protected free speech. In order to recover on such a claim, Plaintiffs must prove three elements:

(1) That the plaintiffs were engaged in a constitutionally protected activity;

(2) That the defendant's conduct caused the plaintiffs to suffer an injury that would chill a person of ordinary firmness from continuing to engage in the protected activity; and

(3) That the defendants's adverse actions were substantially motivated by the plaintiff's constitutionally protected activity.

*Keenan v. Tejada*, 290 F.3d 252, 258 (5th Cir. 2002).

Neither party disputes that Plaintiffs were engaged in a constitutionally protected activity. Nor is there a serious dispute as to whether Sheriff Brown's alleged actions caused Plaintiffs to suffer a

chilling injury. Rather, the dispute centers on what motivated the conduct. There is some evidence in the record from which a reasonable fact finder could find that an aversion to door-to-door sales motivated Sheriff Brown.[3] Moreover, the motivation issue is inherently factual. Accordingly, there is a genuine issue of material fact as to whether a constitutional violation occurred.

### 2.    *Clearly Established*

A constitutional violation will only foreclose qualified immunity if the right violated was clearly established at the time of the injury. In making this determination, the Court should focus on the particular conduct at issue–not a broad abstract right.

There is no dispute that the First Amendment protects door-to-door solicitation. *See Secr'y of State v. Joseph H. Munson Co.*, 467 U.S. 947 (1984); *Vill. of Schaumburg v. Citizens for a Better Environment*, 444 U.S. 620 (1980). Furthermore, the Supreme Court has also held that willing residents have a First Amendment right to receive information. *Martin v. Struthers*, 319 U.S. 141 (1943) (overturning outright ban on solicitation in part because it would infringe on First Amendment rights of those wishing to receive the information).

For purposes of the third incident, the evidence shows that Jackson Parish citizens welcomed the LCS salespeople into their homes and did not ask them to leave. This immediately distinguishes the third incident from the second incident, where at least one resident informed authorities that a salesperson had remained in her home after being asked to leave. In the absence of a valid regulation

---

[3]Deputy Palmer mentioned that Jackson Parish was not keen on door-to-door solicitation. Moreover, Jefferson testified that the unidentified Jackson Parish deputies, upon pulling an LCS salesperson out of a customer's home, announced "[t]hey're going door to door which isn't legal." [Doc No. 39-22, Deposition of Nicholas Jefferson, p. 4]. Although Sheriff Brown did not make these statements, their existence in the record could lead a reasonable fact finder to conclude that there was hostility to door-to-door solicitors in Jackson Parish, and, therefore, Sheriff Brown's alleged actions were motivated by an aversion to the protected activity.

or ordinance, once a solicitor is welcomed into a home, and the resident does not ask them to leave, it violates the clearly established rights of both the solicitor and the potential customer to remove the solicitor from the residence and expel him from the Parish.

Because there was an alleged constitutional violation and because the right allegedly violated is clearly established, Sheriff Brown is not entitled to qualified immunity at this point in the litigation for his possible role in the third incident.

### III. CONCLUSION

For the foregoing reasons, the Court declines to dismiss Plaintiff Jefferson's claims. Accordingly, in addition to the claims against Sheriff Brown in his official capacity stemming from the first two incidents, Plaintiff Jefferson is permitted to pursue claims against Sheriff Brown in his **official** and **individual** capacities based on the **third incident**. The Court amends its previous Ruling and Judgment to the extent it indicated that there were no individual capacity claims against Sheriff Brown.

MONROE, LOUISIANA, this 30th day of December, 2015.

ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE